UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                           :
BRIAN L. PONDER,                           :
                                           :
                      Plaintiff,           :
                                           :          26cv1716 (DLC)
           -v-                             :
                                           :
PROSPER MARKETPLACE, INC.,                 :          OPINION AND
                                           :            ORDER
                      Defendant.           :
                                           :
----------------------------------------- X

APPEARANCES:

For plaintiff:

Brian Lamar Ponder (appearing pro se)
Brian Ponder LLP
745 Fifth Avenue
Suite 500
New York, NY 10151

For defendant:

Amisha R Patel
Orrick, Herrington & Sutcliffe LLP
222 Berkeley Street
Suite 2000
Boston, MA 02116

DENISE COTE, District Judge:

     Plaintiff Brian Ponder initiated this action on February 4,
2026 in New York state court.  Having removed the action to
federal court, defendant Prosper Marketplace, Inc. ("Prosper")
moves to compel arbitration and to stay the case pending
resolution of that arbitration.  For the following reasons,

Prosper's motion is granted.  This action is stayed pending completion of the arbitration.

## Background

The following facts are taken from the plaintiff's complaint and the evidence that was submitted in connection with Prosper's motion to compel arbitration.  This Order summarizes only those facts relevant to the instant motion.

Prosper is a financial technology company that offers a credit card called the Prosper Card ("Card").  Ponder, an attorney representing himself pro se, applied for and obtained the Card on or about December 29, 2021.

In support of this motion, Prosper submitted a declaration of Allyson Bryant, its Vice President of Product Management.  In that declaration, Bryant states that, to apply for a Card, applicants must submit an online application on Prosper's website.  After successfully submitting an application, the website will display an offer page that displays in a scrollable box, in full, the Cardholder Terms & Conditions ("Terms & Conditions") governing the Card.  Prosper submitted a screenshot of the offer page and the full Terms & Conditions as supporting exhibits.

The Terms & Conditions contain an Arbitration Agreement ("Agreement"), which begins with the following disclosure:

PLEASE READ THIS PROVISION OF THE AGREEMENT (the "Arbitration Agreement") CAREFULLY.  IT CONSTITUTES A BINDING AGREEMENT BETWEEN US TO ARBITRATE ANY DISPUTE WHENEVER YOU OR WE ELECT TO ARBITRATE A CLAIM (AS DEFINED BELOW).  UNLESS YOU REJECT IT WITHIN THIRTY (30) DAYS AFTER YOUR ACCOUNT IS OPENED, THE ARBITRATION AGREEMENT WILL HAVE A SUBSTANTIAL EFFECT ON YOUR RIGHTS IN THE EVENT OF A DISPUTE.  ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.  IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY.  YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO REJECT THIS ARBITRATION AGREEMENT, AS PROVIDED BELOW.

The Agreement defines "Claim" to "ha[ve] the broadest possible meaning" and to include "disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity" as well as "any dispute related to the scope, validity, or enforceability" of the Agreement.  It continues, "thus, all such disputes are expressly delegated to an arbitrator for decision."

In an opt-out provision, the Agreement offers applicants the right to reject the Agreement by mailing a notice to Prosper within 30 days of opening an account.  The provision states that "[t]his is the only manner you can reject this section."

Choice-of-law provisions in the Agreement and the Terms & Conditions indicate that federal law, in particular the Federal

3

Arbitration Act ("FAA"), and, "to the extent state law applies," the laws of the State of Washington, govern the contract.

The Terms & Conditions state that the user accepts the terms of the contract by doing any of the following:

> (i) expressly providing your consent electronically or in writing, (ii) using the Card or causing any Charge to be made on the Account, or (iii) not cancelling your Card and closing the Account within thirty (30) days of a Card being sent to you.

At the bottom of the offer page is a notice stating that "[b]y checking the box below you agree by electronic signature to and acknowledge the following," with the statement "I have read, understood, and agree to the Terms & Conditions" next to a clickable box.  A user must click that box, as well as a prominent orange button titled "Agree & Continue," to proceed with the offer.  The offer page states that the Terms & Conditions "are not effective until Prosper communicates a final approval" to the user.

Ponder was approved for the Card after applying on the offer page.  Prosper's records indicate that Ponder used the Card to make purchases and did not cancel the Card within 30 days of it being sent to him.  Prosper has not located any arbitration opt-out correspondence from Ponder.

In a declaration submitted in opposition to this motion, Ponder states that he does "not recall" being presented with the

4

Terms & Conditions, clicking boxes indicating he understood the terms of the contract, or clicking the "Agree & Continue" button.  He "does not know" whether he applied for the Card directly through Prosper's website "or through another platform or channel."

On February 4, 2026, Ponder filed a complaint in New York state court, bringing claims of negligence, invasion of privacy, breach of implied contact, unjust enrichment, and breach of fiduciary duty arising out of an alleged failure to implement and maintain reasonable cybersecurity measures during a data breach from June through August 2025.  On March 2, Prosper removed the action to federal court.  On March 9, it filed the instant motion.  The motion became fully submitted on April 10.

## Discussion

Under the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  The FAA also requires federal courts, upon application of a party to the contract, to stay adjudication of claims covered by an enforceable arbitration agreement until such arbitration has been had.  See id. § 3.  The FAA reflects "both a liberal federal policy favoring arbitration and the

fundamental principle that arbitration is a matter of contract."
Davitashvili v. Grubhub Inc., 131 F.4th 109, 114 (2d Cir. 2025)
(citation omitted).  Accordingly, courts must "rigorously
enforce arbitration agreements according to their terms."  Id.
at 115 (citation omitted).

Motions to compel arbitration "are governed by a standard
similar to that applicable for a motion for summary judgment."
Barrows v. Brinker Rest. Corp., 36 F.4th 45, 49 (2d Cir. 2022)
(citation omitted).  Accordingly, courts consider "all relevant,
admissible evidence submitted by the parties and contained in
pleadings," including affidavits, and draw all reasonable
inferences in favor of the non-moving party.  Meyer v. Uber
Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted).
"Where the undisputed facts in the record require the matter of
arbitrability to be decided against one side or the other as a
matter of law, [the court] may rule on the basis of that legal
issue and avoid the need for further court proceedings."  Id.
(citation omitted).  The party opposing arbitration "must
present competent evidence that creates a genuine issue of
material fact."  McKinney v. City of Middletown, 49 F.4th 730,
738 (2d Cir. 2022) (citation omitted).

In determining whether the parties agreed to arbitrate,
courts apply "ordinary state-law principles that govern the

formation of contracts".  Davitashvili, 131 F.4th at 115

(citation omitted).  This inquiry involves several steps, and at

each step of the inquiry, "traditional contract principles

apply."  Coinbase, Inc. v. Suski, 602 U.S. 143, 149 (2024).

First, a court determines "whether an agreement to arbitrate

between the parties exists."  Davitashvili, 131 F.4th at 115.

The FAA's scope is limited to "agreements to arbitrate

controversies that 'arise out of' the parties' contractual

relationship -- that is, controversies that were caused by the

relationship."  Id. at 119 (citation omitted).  Next, a court

inquires "whether questions of 'arbitrability'" -- in other

words, questions of whether a particular dispute is subject to

arbitration -- "are for the court or the arbitrator to decide."

Id. at 115.  Finally, where an arbitration agreement leaves

intact a court's presumptive power to determine arbitrability, a

court then determines "whether the parties' arbitration

agreement covers a particular claim."  Id. at 119.

    With respect to contract formation, "it is clear that

general contract principles under Washington law apply to

agreements made online."[1]  Nicosia v. Amazon.com, Inc., 834 F.3d

---

[1] As instructed by the choice-of-law provisions in the Terms &
Conditions and Arbitration Agreement, the Court will apply
Washington law.  The Court of Appeals for the Second Circuit has
noted, however, that "traditional contract formation law does

220, 231 (2d Cir. 2016).  Contract formation requires an "objective manifestation of mutual assent."  Id. at 232. Manifestation of assent to an online contract "can be accomplished by words or silence, action or inaction, so long as the user intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents."  Id. (citation omitted).  If a party has assented to a contract without reading it, he may only argue that mutual assent was lacking if he was "deprived of the opportunity to read the contract or if the contract was not plain and unambiguous."  Id. (citation omitted).  In other words, "to be bound, an internet user need not actually read the terms and conditions or click on a hyperlink that makes them available as long as [he] has notice of their existence."  Id.

Courts have held that an internet user had sufficient notice of a contract that he has assented to if he "had actual knowledge of the contractual terms" or if "a reasonably prudent person would be on inquiry notice" of the terms.  Edmundson v. Klarna, Inc., 85 F.4th 695, 703 (2d Cir. 2023) (citation omitted).  "Inquiry notice is actual notice of circumstances sufficient to put a prudent person upon inquiry."  Soliman v.

---

not vary meaningfully from state to state."  Edmundson v. Klarna, Inc., 85 F.4th 695, 702-03 (2d Cir. 2023).

Subway Franchisee Advert. Fund Tr., Ltd., 999 F.3d 828, 834 (2d Cir. 2021) (citation omitted).  "A reasonably prudent internet or smartphone user is on inquiry notice of contractual terms where the terms are presented in a clear and conspicuous way." Edmundson, 85 F.4th at 704.  "In the context of web-based contracts," courts "look to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in way that would put [him] on inquiry notice of such terms."  Starke v. SquareTrade, Inc., 913 F.3d 279, 289 (2d Cir. 2019).

One method of alerting an internet user to terms and conditions is through a "clickwrap agreement" that identifies that the user is accepting those terms before proceeding. Nicosia, 834 F.3d at 233.  A clickwrap agreement requires the user to affirmative click an "I agree" box after being presented conspicuously with the terms and conditions.  Id.  "Clickwraps force users to expressly and unambiguously manifest either assent or rejection prior to being given access to the product." Id.; see Zachman v. Hudson Valley Fed. Credit Union, 49 F.4th 95, 103 (2d Cir. 2022) ("We have consistently upheld such agreements because the user has affirmatively assented to the terms of the agreement by clicking 'I agree' or similar language.").

Washington follows the "objective manifestation theory" of contract interpretation, under which courts focus on the "reasonable meaning" of the contract language to determine the parties' intent at the time they entered into the agreement. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wash. 2d 493, 503 (2005). "Thus, when interpreting contracts, the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used." Id. at 503-04.

Ponder's action must be referred to arbitration. The Terms & Conditions, which mandate arbitration of this dispute, were clearly and conspicuously presented in full in the middle of the offer page. A clickwrap agreement required Ponder to affirmatively check that he had "read, understood and agree[d] to the Terms & Conditions" and to click the "Agree & Continue" button below that affirmation to successfully apply for and receive a Card. Ponder does not dispute that he received the Card and used it. He does not assert that he cancelled the Card within 30 days of receiving it or that he sent an arbitration opt-out notice. Accordingly, the action is stayed pending the outcome of arbitration proceedings.

Ponder argues that he was not provided with adequate notice of the Agreement. Ponder makes essentially six arguments in opposition to this motion to compel arbitration. First, he

10

argues that Prosper has not offered sufficient evidence of the formation of a contract since Ponder does not know if he applied for the Card through Prosper's website.  This failure of recollection is insufficient.  The Bryant declaration explains that those who apply for the Card "are required to complete an online application process Prosper's website."  Ponder's failure of recollection is not sufficient to contradict Bryant's statement.  See McKinney, 49 F.4th at 738; cf. Michak v. Transnation Title Ins. Co., 148 Wash. 2d 788, 799 (2003) ("A party who signs an instrument manifests assent to it and may not later complain about not reading or not understanding." (citation omitted)).

Ponder next asserts that the Agreement, which is contained within the Terms & Conditions, is unenforceable because it does not appear on the offer page and only appears after the applicant for the Card scrolls down.  Terms & Conditions are typically lengthy documents and the law does not require that all terms be visible on an offer page.  What is required is that the terms are presented in a clear and conspicuous way, and Prosper has shown that was done here.

Ponder objects that Prosper has not proven that the Agreement attached to the defendant's motion was the "version actually presented" to him.  He is wrong.  Ms. Bryant declares

11

that the Agreement attached to her declaration is a true and correct copy of the document "in effect when" Ponder applied for the Card.

Ponder contends that the Agreement's clause delegating the question of arbitration to the arbitrator is unenforceable because Prosper has not established his assent to that clause. Because the Agreement is located within the Terms & Conditions, this argument fails for the reasons stated above.

Ponder contends that Prosper may not enforce the arbitration of his claims because the Card was issued by a bank and not Prosper, and that Prosper did not sign the Terms & Conditions. Again, the Agreement unambiguously delegates the question of arbitrability to the arbitrator. In any event, in subparagraphs directly following the Agreement, the document defines "claim" and the terms "we," "us," and "our." The definition identifies "Prosper" as a party to the Agreement.

Lastly, Ponder makes a number of evidentiary arguments. These include that the Bryant Declaration fails to authenticate electronic evidence as required by Rule 901, Fed. R. Evid.; that Prosper has not established that its systems reliably record a user's acceptance; and that Bryant improperly summarizes business records in violation of Rule 803(6), Fed. R. Evid. These arguments fall flat. Bryant has been the Vice President

12

of Product at Prosper since September of 2020.  In that role, she is intimately familiar with Prosper's records systems and business records as they pertain to the Card.  She states that the records are maintained in the regular course of Prosper's business and that Prosper relies on those records in the ordinary course to conduct its business.  As a result, her testimony about the Card's acceptance process and Prosper's records searches conducted in connection with this litigation is sufficiently reliable.  See Rule 901(b)(1), Fed. R. Evid. (permitting evidence from a witness with knowledge "that an item is what it is claimed to be").

## Conclusion

Prosper's March 9, 2026 motion to compel arbitration and to stay the case pending arbitration of Ponder's claims is granted.

Dated:    New York, New York
          May 14, 2026

_____
DENISE COTE
United States District Judge

13